IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAGHAR MIRFENDERESKI,

et al.,

        Plaintiffs,

v.

WARREN RAKESTRAW,

        Defendant.

Case No. 2:10-CV-306
JUDGE SARGUS
MAGISTRATE JUDGE KEMP

## OPINION AND ORDER

Presently before the Court are Plaintiffs' Motion for Sanctions for Spoliation of Evidence (Doc. 26); Defendant's Motion for Leave to File (Doc. 33); Plaintiffs' Motion to Dismiss Counterclaim (Doc. 41); Plaintiffs' Motion for Leave to File Plaintiffs' Supplemental Memorandum in Support of Plaintiff Saghar Soleymani's Motion for Sanctions for Spoliation of Evidence (Doc. 45); Defendant's Motion to Dismiss Plaintiff Sean Mirfendereski (Doc. 54); and Defendant's Motion for Summary Judgment (Doc. 55). For the reasons set forth herein, Plaintiffs' motion to dismiss Defendant's counterclaim is **GRANTED**; Plaintiffs' motion for sanctions is **DENIED**; the Parties respective motions for leave to file are **DENIED as MOOT**; Defendant's motion for summary judgment is **GRANTED**; and Defendant's motion to dismiss Sean Mirfendereski is **DENIED as MOOT**.

I.

Plaintiffs Saghar Soleymani and Sean Mirfendereski, husband and wife (collectively "Plaintiffs"), bring the instant action against Defendant Vincent Rakestraw with claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and for invasion of privacy under Ohio common law.

Plaintiffs' claims arise from a letter sent by Defendant on behalf of Prep Academy Schools ("Prep Academy") in an attempt to collect a debt purportedly owed by Plaintiffs to Prep Academy. In 2006, Plaintiffs initially enrolled their daughter at Prep Academy. (*See* Doc. 55-2 at 7.) A check issued by Plaintiffs to Prep Academy on April 5, 2006 to pay a deposit and to purchase materials and books lists "Saghar Soleymani" and "Seyed Mirfendereski" as the account holders, and gives their address as 3832 Cherrybridge Lane, Dublin, Ohio 43016. (Doc. 55-4.) Prior to October 2006, Plaintiff Sean Mirfendereski's legal name was Seyed Mohammad Mirfendereski. (*See* Doc. 55-5.) The Cherrybridge Lane address is where Plaintiffs resided at the time they first enrolled their daughter in Prep Academy, but Plaintiffs' subsequently changed their residence. (*See* Doc. 55-3 at 13.) In the spring of 2008, Plaintiffs paid a $500 deposit for enrollment of their daughter for the 2008/2009 school year. (*See* Doc. 55-3 at 7.) However, their daughter ultimately did not attend the school for that year, and the deposit was credited to Plaintiffs' account. (*See* Doc. 55-3 at 14–15.) The record also includes a Prep Academy financial form completed by Saghar Soleymani that lists Sean Mirfendereski as the account payer and Saghar Soleymani as a "secondary contact." (Doc. 55-8.)

Defendant is an attorney who has represented Prep Academy in various business matters for approximately ten years. (Doc. 55-7, ¶ 2.) According to Defendant, in 2009, as part of a foreclosure matter in which he was representing Prep Academy, the school turned over to him approximately ten accounts that were past due or delinquent for collection. (Doc. 55-7, ¶ 4.) Defendant claims to have sent a single letter to each account, but did no follow-up, and recovered no funds through his efforts. (Doc. 55-7, ¶ 4–7.) One of these letters was intended for Plaintiffs, although they claim that Prep Academy erroneously identified them as being delinquent on their account. (*See* Doc. 53-3 at 8.)

2

On October 5, 2009, Defendant sent a letter, addressed to "Seyed Mirfendereski 30 W. Orange Hill Circle, Chagrin Falls, OH 44022," which stated the following:

> I represent Prep Academies, Inc. regarding the above-referenced delinquent account. Prep Academies, Inc. has exhausted all non-legal collection means and requested that I pursue the outstanding balance. Before recommending further action to my client, it is my practice to give you an opportunity to resolve this matter on mutually agreeable terms. However, I must hear from you in order to do so and ask that you contact my office, via telephone or letter, to make payment arrangements. Or you may simply remit a check for the total amount due made payable to W. Vincent Rakestraw Trust Account.
>
> The Federal Fair Debt Collection Practices Act requires that my office provide you with the following information:
>
> As of the date of this letter, the total amount due is $11,298.00, which includes the principal balance, interest, late charges, and amounts, if any, expended by the creditor. Some of these items may change from day to day resulting in the amount being different on the day you pay. Therefore, if you pay the amount shown above, an adjustment may be necessary after we receive your check.
>
> Prep Academies, Inc. is the creditor for this debt. You have thirty-days (30) to dispute, in writing, the validity of this debt. *Unless, within thirty-days (30) of receiving this Notice, you notify me that you dispute the validity of this debt or any portion thereof, I will assume the debt is valid.*
>
> This Notice is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.
>
> If you notify me, in writing, within thirty-days (30) of receiving this Notice that you dispute the validity of this debt or any portion thereof, I will obtain a copy of the verification and mail it to you.
>
> If the creditor named herein is not the original creditor, and if you make a written request to this office within thirty days from the receipt of this Notice, I will provide you with the name and address of the original creditor.
>
> I hope to hear from you so that this matter can be resolved amicably. If you have questions or concerns, I suggest that you contact legal counsel.

(Doc. 55-1 (emphasis in original).)

As it turns out, however, Seyed Mirfendereski of Chagrin Falls, Ohio, is the brother of Sean Mirfendereski, formally also known as Seyed Mirfendereski. According to Defendant, the

3

account statement provided to him by Prep Academy listed Seyed Mirfendereski as the delinquent account holder and listed the Cherrybridge Lane address. (Doc. 55-7, ¶ 10.) He was also provided the copies of the cancelled checks referenced above that list Seyed Mirfendereski as a checking account holder. (Doc. 55-7, ¶ 11.) Defendant also received the financial form listing Sean Mirfendereski as the payer, and claims that he simply sent the letter to whom he believed owed the debt to Prep Academy. (Doc. 55-7, ¶¶ 12, 14.) However, at his deposition, Defendant testified that he did not see the copies of the cancelled checks naming Seyed Mirfendereski until after the letter had been sent. (Doc. 59-3 at 31.) Plaintiffs also note that the financial form listing Sean Mirfendereski as the payer provided Plaintiffs' correct contact information and mailing address, but none of the materials received by Defendant contained information for the Seyed Mirfendereski living in Chagrin Falls.

Defendant avers that he does not collect debts as a matter of course for any client, including Prep Academy. (Doc. 55-7, ¶ 8.) He further avers that the work he did attempting to collect on the ten delinquent accounts represented an extremely small portion of the work he did in the related foreclosure matter, and far less than 1% of the total work he has done for Prep Academy over the years. (Doc. 55-7, ¶ 9.) While he does regularly represent debtors facing foreclosure and credit card collections, he cannot recall ever filing a lawsuit to collect a debt on behalf of a creditor, claims to have no ongoing relationship with clients in the business of debt collection, and claims that he does not participate in the collection of consumer debts. (Doc. 55-7, ¶¶ 17–20.)

Plaintiffs' amended complaint alleges that Defendant violated the FDCPA. They further allege that by sending the letter, Defendant committed the Ohio tort of invasion of privacy. According to them, the receipt of the letter by Sean Mirfendereski's brother caused a

4

deterioration of the brothers' business relationship, which has damaged them financially. They also claim to have suffered severe emotional distress, embarrassment, and injury to their marriage as a result of Defendant's "highly offensive conduct."

## II.

The Court first grants Plaintiffs' Motion to Dismiss Counterclaim (Doc. 41). Defendant has filed what he styles a counterclaim pursuant to 15 U.S.C. § 1692k(a)(3), which provides in part that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." As noted by Plaintiffs', the quoted language does not provide an independent cause of action, and is thus not suitable as the basis for a counterclaim. Defendant's counterclaim is accordingly dismissed. However, the Court's ruling in this regard should not be interpreted as precluding Defendant from now moving for attorney's fees and costs.

## III.

The Court next considers Plaintiffs' Motion for Sanctions for Spoliation of Evidence (Doc. 26), Defendant's Motion for Leave to File (Doc. 33), and Plaintiffs' Motion for Leave to File Plaintiffs' Supplemental Memorandum in Support of Plaintiff Saghar Soleymani's Motion for Sanctions for Spoliation of Evidence (Doc. 45). As stated below, the Court denies Plaintiffs' motion for sanctions.

Plaintiffs accuse Defendant of destroying other debt collection letters sent by Defendant and request a sanction precluding Defendant from challenging his status as a "debt collector" as that term is defined by the FDCPA. Defendant contends that he never kept copies of the letters, and, therefore, no spoliation has occurred. In September 2010, Defendant filed his response to

5

Plaintiffs' first request for production of documents. Item 14 requested the following: "All letters you have sent from January 1, 2007 through December 31, 2009 regarding collecting or attempting to collect debts owed or due or asserted to be owed or due another." (Doc. 26-3 at 3.) Defendant objected to this request on grounds of privilege and confidentiality, but also stated that the requested documents "[w]ill be disclosed pursuant to a proper protective order." (Doc. 26-3 at 3.)

Plaintiffs subsequently filed a motion to compel production of the letters (Doc. 16), which was granted by Magistrate Judge Kemp. (Doc. 20.) However, following the issuance of the Order by Judge Kemp, on November 11, 2010, counsel for Defendant stated in an email to counsel for Plaintiffs that "I do not believe that we have any letters to produce." (Doc. 26-4 at 2.) Finally, in a formal response to the production request dated November 17, 2010, Defendant stated that: "Defendant's counsel had been proceeding under the incorrect assumption that copies of the letters in question had been retained in the course of Defendant's business and the same would be available for production. However, upon inspection of the Defendant's files copies of these letters never existed." (Doc. 26-5 at 4.) Defendant's contention that copies of any letters sent by him were not kept, and therefore could not be produced, is supported by an affidavit that also points out that he had to obtain a copy of the very letter at issue in this case from Plaintiffs' counsel because he did not possess a copy himself. (*See* Doc. 30-1 at 2.)

Factors to be considered in determining whether to sanction a spoliating party include:

1. whether the innocent party was prejudiced by the loss of the evidence

2. whether this prejudice can be cured;

3. the practical importance of the loss of the evidence;

4. the fault of the spoliator; and

6

> 5. what is the least onerous sanction that will effectively deter the offending conduct.

*Strong v. U-Haul Co. of Mass.*, No. 1:03-cv-00383, 2006 U.S. Dist. LEXIS 97158, at *9 (S.D. Ohio Dec. 28, 2006). As a prerequisite for the imposition of a sanction, however, spoliation must actually have occurred. In the Court's view, a conclusion that Defendant destroyed copies of debt collection letters in his possession in an attempt to thwart the discovery process is unsupported by the record. As "evidence" of Defendant's malfeasance, Plaintiffs point to seemingly inconsistent statements made by Defendant during the course of the interactions between the Parties. In a letter to Plaintiffs' counsel dated April 8, 2010, Defendant stated that "[Plaintiffs'] case is one of only about 4 or 5 debt collections I have done." (Doc. 26-1 at 1.) The Court notes that nowhere in this letter did Defendant represent that he had retained copies of any letters he had sent out.

After litigation commenced, Defendant and his counsel did, however, file responses to Plaintiffs' discovery requests and made statements in legal memoranda that implied that the letters existed. For instance, in response to item 14 of Plaintiffs' request for the production of documents, Defendant indicated that the requested letters would be produced once a protective order was entered. Additionally, in his response to Plaintiffs' motion to compel, Defendant did not dispute the existence of the letters. (*See* Doc. 18.) While these responses imply that Defendant at least believed that letters responsive to item 14 were in his possession, a conclusion that Defendant then destroyed the letters based on that evidence would be based largely on conjecture and speculation. The conclusion that Defendant and his counsel simply made a mistake in assuming that copies of the letters existed, as they have represented, is equally or even more plausible than the inference that Defendant destroyed the letters. For instance, if Defendant did in fact possess copies of the letters, acknowledging that they existed before destroying them

7

would not seem to be a rationale course of action. Accordingly, the Court concludes that Plaintiffs have failed to demonstrate that Defendant had retained copies of debt collection letters he had sent and subsequently destroyed them to hinder Plaintiffs efforts in proving their case.

However, even if the Court were to conclude that Defendant had destroyed the letters, the Plaintiffs' requested sanction, that Defendant be precluded from challenging his status as a debt collector under FDPCA, would be excessive. Significantly, the only letters the existence of which are seriously in dispute by the Parties are the letters Defendant admits to sending on behalf of Prep Academy in 2009. While Defendant has not been entirely consistent with his representations as to exactly how many letters he sent, the maximum number he has admitted to sending is eight to ten. (*See* Doc. 32-1 at 4.) Plaintiffs' have offered no evidence to suggest, for instance, that Defendant's practice included substantial debt collection activities that he has managed to conceal. In light of the limited number of letters at issue, an evaluation of the required factors reveals that the requested sanction would be excessive. In this regard, the fact that Defendant has admitted sending the letters would render the loss of the hypothetical evidence of limited practical importance as the relevance of the letters lies more in their connection with Defendant's actions and less in their actual content. For the same reason, Defendant's admission also minimizes any prejudice that could be suffered by Plaintiffs. Finally, in the Court's view, a sanction awarding Plaintiffs' victory on the key element of their FDCPA claim would be onerous, especially given that Plaintiffs would not otherwise survive summary judgment absent the sanction.

Defendant's Motion for Leave to File (Doc. 33) and Plaintiffs' Motion for Leave to File Plaintiffs' Supplemental Memorandum in Support of Plaintiff Saghar Soleymani's Motion for Sanctions for Spoliation of Evidence (Doc. 45) are denied as moot.

IV.

A.

Defendant has moved for summary judgment on both of Plaintiffs' claims. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see*

*Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

**B.**

Plaintiffs' first claim alleges a violation of the FDCPA, which provides in part that:

> without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). Plaintiffs allege that Defendant violated the FDCPA by sending the letter to a third party without their permission. A threshold determination before liability can attach under the FDCPA is whether a defendant is a "debt collector" as that term is defined in the statute. Defendant asserts that summary judgment as to Count I of the amended complaint should be granted because Plaintiffs have failed to create a material issue of fact as to whether he is a debt collector. The Court agrees.

The FDCPA defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business *the principal purpose of which* is the collection of any debts, or who *regularly* collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis supplied). As an

10

initial matter, there is nothing in the record that would support a finding that debt collection is the principal purpose of Defendant's practice. Accordingly, Plaintiffs must produce evidence from which a reasonable jury could find that Defendant "regularly" engaged in debt collection activities. The Sixth Circuit's decision in *Schroyer v. Frankel*, 197 F.3d 1170 (6th Cir. 1999), is directly on point. There, the Court held that:

> Drawing from [the FDCPA's] legislative history, we believe it reveals that for a court to find that an attorney or law firm "regularly" collects debts for purposes of the FDCPA, a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice. . . . In identifying such attorneys, other courts have relied upon a variety of factors, including the volume of the attorney's collection activities, the frequent use of a particular debt collection document or letter, and whether there exists a steady relationship between the attorney and the collection agency or creditor he represented. [ ] Courts have considered what portion of the overall caseload debt collection cases constitute, and what percentage of revenues derive from debt collection activities. [ ] Some have maintained that even where debt collection takes up a minor portion of a law practice, "debt collector" liability may lie where the defendant has an "ongoing relationship" with a client whose activities substantially involve debt collection. [ ]
>
> Applying these principles to the undisputed factual findings in this case, we believe Plaintiffs failed to prove that Defendants "regularly" collect debts so as to constitute "debt collectors" under the FDCPA. The district court found that only two percent of Smith & Smith's overall practices consisted of debt collection cases, and that the firm did not employ individuals full-time for the purpose of collecting debts. The district court further found that only 7.4%, 29 of 389 cases annually, of Frankel's overall practice consisted of debt collection cases, and that in the majority of his debt collection cases, he represented debtors-implying that Frankel was not competing with lay debt collectors. Moreover, the district court found that Frankel represented a number of business clients who were the source of his twenty-nine debt collection cases. Moreover, the district court found that Frankel represented a number of business clients who were the source of his twenty-nine debt collection cases.
>
> Finally, the court observed that Plaintiffs failed to offer evidence showing that fees generated or collected by Smith & Smith or Frankel from debt collection activities constituted a great portion of overall revenues, and failed to offer proof that Smith & Smith or Frankel handled debt collection cases as part of an ongoing relationship with a major creditor or business client with substantial debts for collection. While these facts do support the inference that it was not unusual for

11

> Defendants to perform debt collection work, or that their debt collection work occurred in more than an isolated instance, we believe it does not support a claim that Defendants were "in the business" of debt collection, that they were in the "debt collection" industry, or that Smith & Smith was a "debt collection firm." Rather, the facts establish that Defendants' debt collection activities were incidental to, and not relied upon or anticipated in, their practice of law, and that therefore they should not be held liable as "debt collectors" under the FDCPA. Accordingly, we hold that the district court did not err in ruling in Defendants' favor and in dismissing Plaintiffs' FDCPA claims against Defendants.

*Id.* at 1176–77 (citations omitted).

The record in the instant case reveals the following: in 2009, Defendant sent out at most ten collection letters on behalf of Prep Academy; these letters were the only debt collections he ever did on behalf of that client, and represent less than 1% of the work he has performed for Prep Academy; he failed to generate any revenue from any of the collection letters and did not follow up with them in any way; he has no ongoing relationship with any client involved in the debt collection industry; and he has not generated revenue through debt collections. Plaintiffs have not produced evidence that disputes any of these contentions. Accordingly, the record, even when construed in their favor, demonstrates a much lower degree of debt collection activities by an attorney than those at issue in *Schroyer*. Logically, if the Sixth Circuit ruled that the attorneys in that case were not debt collectors as a matter of law, then Defendant, whose debt collection activities are less substantial, also cannot be considered a debt collector.

Plaintiffs argue that summary judgment as to Count I should be denied on three alternative grounds. First, they allege that Defendant should be precluded from challenging his status as a debt collector because he destroyed evidence. The Court has already determined in Part III *supra*, that Plaintiffs have failed to demonstrate that Defendant actually destroyed the letters in question. Moreover, even had he done so, such a sanction would be excessive, given that he admitted to sending the letters.

12

Plaintiffs next claim that a material issue of fact as to whether Defendant is a debt collector arises because Defendant himself stated that he was a debt collector in the letter from which Plaintiffs' claims arise. Plaintiffs rely on the unpublished district court decision in *Hunter v. Washington Mutual Bank*, No. 2:08-CV-069, 2010 U.S. Dist. LEXIS 59917 (E.D. Tenn. June 16, 2010), for the proposition that such a representation in a letter alone can create a material issue of fact as to whether an attorney is a debt collector. However, a review of that case reveals that other factors, such as representations made on the defendant's website, may have influenced the court's decision. *See id.* at *12. Moreover, even if the *Hunter* decision could be interpreted to stand for the proposition advanced by Plaintiffs, this Court would respectfully decline to follow it. The actual representations made by a purported debt collector are not an element of the statutory definition, and are not a factor identified in *Schroyer*. Further, as noted by Defendant and made evident by *Schroyer*, the determination of whether an entity or individual is a debt collector is a fact intensive inquiry that is not easily resolved prospectively. Accordingly, it is eminently reasonable for an attorney whose status as a debt collector is uncertain under the statutory definition to attempt to comply with the FDCPA's requirements in order to minimize the risk of violating the statute. Punishing attorneys who do so by determining that they are covered by the FDCPA simply by including required statutory language in their debt collection letters would discourage such prudential behavior.

Finally, Plaintiffs' insist that discrepancies in statements made by Defendant create a material issue of fact. While it is true that Plaintiff has not been entirely consistent about the number of debt collection letters he has sent, his statements only suggest a range of letters of between four and ten. As explained above, a maximum of ten letters sent at one point in time for one client is simply not enough evidence from which a reasonable jury could conclude that

13

Defendant is a debt collector as that term is defined by the FDCPA. Accordingly, summary judgment is granted to Defendant on Count I of the amended complaint.

## C.

Count II of the amended complaint alleges that by sending the single letter at issue in this case, Defendant committed the tort of invasion of privacy. Defendant moves for summary judgment on this count asserting that Plaintiffs have failed to provide sufficient evidence to prevail on this claim. The Supreme Court of Ohio has defined invasion of privacy as:

> the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Housh v. Peth*, 133 N.E.2d 340, 341 (Ohio 1956) (syllabus of the Court). The intrusion into an individual's privacy must be "highly offensive to a reasonable person." *Sustin v. Fee*, 431 N.E.2d 992, 995 (Ohio 1982) (citing RESTATEMENT (SECOND) OF TORTS § 652B). Additionally, as invasion of privacy is an intentional tort; a mere negligent intrusion into the private affairs of another is not sufficient to support recovery. *See McCormick v. Haley*, 307 N.E.2d 34, 38 (Ohio Ct. App. 1973).

In *Housh*, the conduct constituting invasion of privacy involved a "*systematic* campaign of harassment of the plaintiff." *Housh*, 133 N.E.2d at 344 (emphasis supplied). Telemarketing calls reach the level of an invasion of privacy when "calls are repeated with such persistence and frequency as to amount to a course of hounding the Plaintiffs that becomes a substantial burden to his existence that the Plaintiffs' privacy is invaded." *Irvine v. Akron Beacon Journal*, 770 N.E.2d 1105, 1112 (Ohio Ct. App. 2002). Finally, in *Housh*, the Supreme Court of Ohio also recognized that a "creditor has a right to take reasonable action to pursue his debtor and persuade payment." *Housh*, 133 N.E.2d at 341 (syllabus of the Court).

Based on above, Plaintiffs' have failed to produce evidence from which a reasonable jury could find for them on their invasion of privacy claim. As already noted, this case involves a single letter that was sent to Sean Mirfendereski's brother who happened to have the same first name that Mr. Mirfendereski previously had used. A single letter cannot be characterized as a systematic practice. Nor can the relatively polite letter at issue in this case be considered highly offensive or to have burdened the existence of Plaintiffs. Plaintiffs have pointed to no evidence tending to contradict Defendant's statements that he simply received a stack of several delinquent accounts from Prep Academy, and attempted to collect on them by sending a letter. In this regard, there is no evidence from which even an inference can be drawn that Defendant did not actually believe that Plaintiffs owed a debt to Prep Academies, or intentionally sent the letter to the wrong person. If this were the case, then perhaps malicious intent could also be inferred. However, absent any such evidence, and given the Supreme Court of Ohio's recognition that reasonable steps can be taken by creditors to collect on their debts without committing the tort of invasion of privacy, the Court concludes that the single letter at issue here must be considered such a reasonable step.

## VI.

As the Court grants summary judgment to Defendant on both counts of the amended complaint, Defendant's Motion to Dismiss Plaintiff Sean Mirfendereski (Doc. 54) is denied as moot.

## V.

For the forgoing reasons, Plaintiffs' Motion for Sanctions for Spoliation of Evidence (Doc. 26) is **DENIED**; Plaintiffs' Motion to Dismiss Counterclaim (Doc. 41) is **GRANTED**; and Defendant's Motion for Summary Judgment (Doc. 55) is **GRANTED**. Further, Defendant's

15

Motion for Leave to File (Doc. 33); Plaintiffs' Motion for Leave to File Plaintiffs' Supplemental Memorandum in Support of Plaintiff Saghar Soleymani's Motion for Sanctions for Spoliation of Evidence (Doc. 45); and Defendant's Motion to Dismiss Plaintiff Sean Mirfendereski (Doc. 54) are **DENIED as MOOT**.

**IT IS SO ORDERED**

8-15-2011
**DATED**

**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**